

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | Amy J. St. Eve |
|---|---|---|---|
| CASE NUMBER | 97-C-6023 | DATE | February 18, 2003 |
| CASE TITLE | Harris v. Briley | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Petition for a Writ of *Habeas Corpus*

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] . Enter memorandum order and opinion. For the attached reasons, Harris's petition for a writ of *habeas corpus* is DENIED.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | FEB 19 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | IS | 69 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| JHC | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | |
| | | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA EX. REL., EARL HARRIS, | ) ) ) | |
| Petitioner, | ) ) | |
| | ) | No. 97 C 6023 |
| v. | ) ) | |
| | ) | Judge William J. Hibbler |
| KENNETH R. BRILEY, Warden Stateville Correctional Center | ) ) ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Earl Harris filed a *habeas corpus* petition, 28 U.S.C. § 2254, claiming that the prosecutor deprived him of his Fifth Amendment right against self-incrimination by referring to his failure to testify at trial, that the prosecutor deprived him of due process through inappropriate comments and actions during both trial and closing arguments, and that both his trial and appellate counsel were ineffective. For the following reasons, Harris's petition is DENIED.

### I. Factual Background

Earl Harris, Patricia Bass, Kevin Walton, and Michael Boyd robbed a Chicago tavern in October 1986. Tragically, the owner of the tavern, Wojtek Rutkowski, was fatally shot during the robbery. Walton pleaded guilty to both murder and armed robbery charges, and the other three perpetrators were tried separately, with none of the perpetrators offering testimony against the others.

1

At Harris's trial, the prosecution presented several witnesses to link Harris to the crime and to prove that he shot and killed Rutkowski. The testimony of Maciej Grzyna, a bartender who had been working at the time of the robbery, was central to the prosecution's theory of the case. Grzyna testified that a man jumped over the bar, held a gun to his head, and later shot Rutkowski. Although Grzyna could not identify Harris as the shooter, either during a lineup or during trial, the prosecution shored up the gaps in Grzyna's testimony by introducing Harris's statement to the police. In that statement, Harris confessed that he entered the bar intending to commit a robbery and that he had jumped over the bar during the commission of the robbery. Gryzna's testimony combined with Harris's statements thus linked Harris to the crime. The testimony of Willie Anderson, an acquaintance of Harris's, also supported Harris's role in the crime. Anderson testified that shortly after the robbery and shooting, Harris confessed to him that he had shot the victim. Anderson further testified that he knew that Harris owned and often carried a .380 automatic pistol, the kind of weapon used to murder Rutkowski.

Harris did not testify at trial. His trial counsel attacked the shortcomings of the state's forensic evidence and eyewitness testimony in an attempt to convince the jury that Boyd, not Harris, pulled the trigger. Much of Harris's defense focused on the facts that Harris's palmprint did not match that found on the bar and that Grzyna could not positively identify him as the shooter. For example, counsel stated during closing arguments that "[w]hen Maciej [Grzyna] walked into this courtroom, he never even looked

at Earl Harris. He never pointed a finger at him. He never said, ladies and gentleman, that is the man that did it."

In response to defense counsel's closing arguments, the prosecutor made the following statement during his closing argument:

> The first thing we have to deal with is Maciej [Grzyna] did not identify this man. Maciej cannot identify anyone. He told you that. He testified to that Monday. He has seen Kevin Walton and this Defendant in the lineup. And he was unable to positively identify anyone. He was told, 'Don't guess. Don't just pick anybody out unless you are sure.' But Mr. Katz seems to argue that because that is true, Maciej is telling you that he didn't do it. That's not the case. Did you see at any point Earl Harris stand up and ask Mr. Grzyna, can you say that is not the man who did it? Of course not. He could have looked at all of you and said, Well none of these people. It sure wasn't me.
>
> ***
>
> He was unable to swear in a Court of law that he is positive that that is the man. He is unable to do that. And he initially told the police different . . . And when he stood up in front of five people similar in appearance, he couldn't pick the man out. And he couldn't do it. For that reason, it is suggested you should let Earl Harris go. That is preposterous. You will never be instructed we have to produce an eyewitness to identify the Defendant because that is not the law. This confession, with Dr. Kirschner's [the forensics expert] testimony, is enough to convict this man . . . So, you can understand why Maciej could not positively identify anyone.

Defense counsel objected to the prosecutor's statement and argued that the prosecutor had commented improperly upon Harris's decision not to testify. The state trial judge overruled the objection, and ultimately the jury convicted Harris of first degree murder.

3

In his direct appeal, Harris[1] argued that the prosecutor made numerous improper remarks throughout the trial—referring to the victim's "American Dream" of owning a tavern, inviting the jury to put themselves in the victim's place, and misstating the facts. Additionally, Harris argued that the prosecutor referred to his decision not to testify in violation of his privilege against self-incrimination. The Illinois Appellate Court, however, found that Harris had waived most of his arguments because trial counsel had not objected to the comments at trial. The Illinois Appellate Court did address the merits of Harris's claim that the prosecutor commented improperly on his failure to testify, holding that "the prosecutor's remark was an attempt to put the witness' failure to identify the defendant into perspective and was not calculated to direct the attention of the jury to the defendant's failure to testify." The Illinois Supreme Court denied Harris's petition to appeal from the decision of the state appellate court.

In Harris's post-conviction petition in the Illinois courts, he again raised the issue of the impropriety of the prosecutor's comments and also raised for the first time four additional issues. First, Harris argued that he received ineffective assistance of counsel because his trial counsel failed to object to the allegedly improper comments made by the government and also refused to allow him to take the stand in his own defense. Second,

---

[1] Harris's appellate counsel raised only one issue: that the trial court abused its discretion in imposing a greater sentence upon Harris than the sentence imposed upon Bass. Harris filed *pro se* a supplemental brief in which he raised several issues related to the prosecutor's conduct at trial. The law in Illinois is that a defendant is not entitled to litigate on appeal both via counsel and *pro se*. *People v. Lighthall*, 530 N.E.2d 81 (Ill. App. Ct. 1988). Nevertheless, the Illinois Appellate Court not only allowed Harris to file a *pro se* brief, but also considered each of the issues raised by Harris.

Harris argued that he was deprived of due process because the government allowed the jury to see a file cart with prejudicial markings (the cart had the word "GANGS" printed upon it and contained files with the word "MURDER" upon them). Third, Harris argued that he received ineffective assistance of appellate counsel because his appellate counsel refused to raise the fact that trial counsel had been ineffective. Finally, Harris argued that the Illinois rule regarding the preservation of issues on appeal unconstitutionally burdened his right to a direct appeal because it required him to both make a timely objection at trial and include the objection in a written post-trial motion for a new trial. The trial court dismissed Harris's post-conviction petition, ruling that Harris's new arguments were waived because they could have been raised during his appeal.[2] The Appellate Court affirmed the trial court's dismissal and the Illinois Supreme Court denied Harris's petition for leave to appeal. Harris then filed this *habeas corpus* petition raising substantially the same issues as he raised in his post-conviction petition in the Illinois courts, but raising for the first time a claim that he was denied due process because the state placed a sawed-off shotgun on a file cart in view of the jury even though the shotgun was unrelated to the crime at issue.

## II. Standard of Review

Because Harris filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, that statute governs the

---

[2] Of course, Harris's argument that his appellate counsel was ineffective could not have been raised until the petition for post-conviction review, despite the state court's assessment to the contrary.

grant of a writ of *habeas corpus* here. *Lindh v. Murphy*, 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Hardaway v. Young*, 302 F.3d 757, 761 (7th Cir. 2002). Under AEDPA, a petitioner is entitled to a writ of *habeas corpus* only if the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 404-05, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth" by the Supreme Court or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams*, 529 U.S. at 405-06, 120 S.Ct. 1495. With respect to the "unreasonable application" prong, the petitioner must demonstrate that the state court identified the correct governing legal rule but unreasonably applied it to the facts of the case. *Id.* at 407, 120 S.Ct. 1495; *Matheney v. Anderson*, 253 F.3d 1025, 1041 (7th Cir.2001).

### III. Procedural Default

Before proceeding to the merits of Harris's petition, the Court must first determine whether he has procedurally defaulted any of his claims. In order to raise a constitutional challenge to a state court conviction and sentence in a federal habeas proceeding, the petitioner must have fully and adequately presented the challenge to the state courts. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Chambers v. McCaughtry*, 264 F.3d 732, 737-38 (7th Cir.2001). A petitioner's claims are also procedurally defaulted where a state court relied upon an adequate and independent state procedural

ground as the basis for its decision, barring the petitioner from raising that claim in a petition for federal *habeas corpus* review. *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Perry v. McCaughtry*, 308 F.3d 682, 690 (7th Cir. 2002); *Aliwoli v. Gilmore*, 127 F.3d 632, 633 (7th Cir. 1997). To provide an independent basis for the state court's ruling, the state court therefore must have clearly and expressly declined to reach the merits of the petitioner's claim because of a procedural rule. *Braun v. Powell*, 227 F.3d 908, 912 (7th Cir. 2000). In order to be an adequate ground for a decision, the state's procedural rule must be "firmly established and regularly followed." *Ford v. Georgia*, 498 U.S. 411, 423-424, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991). A petitioner, however, can cure his procedural default in a federal *habeas corpus* proceeding by showing good cause for the default and actual prejudice resulting from the errors of which he claims. *United States v. Frady*, 456 U.S. 152, 168, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002).

In this case, procedural default bars the majority of Harris's claims. Regarding those claims related to prosecutorial misconduct (except the comment related to Harris's refusal to testify), the Illinois Appellate Court expressly found that trial counsel's failure to object to the impropriety of the prosecutor's remarks during trial resulted in waiver. Illinois law provides that unless an objection was made at trial to allow the trial court the opportunity to correct the error, the objection is waived for purposes of the appeal. *People v. Berry*, 609 N.E.2d 900, 904-05 (Ill. App. Ct. 1993); *People v. Hollins*, 482 N.E.2d 1053, 1058 (Ill. App. Ct. 1985). Because the Illinois court relied on a state procedural bar (waiver) in resolving

7

Harris's claims concerning the impropriety of the prosecutor's comments, he has procedurally defaulted those claims. Similarly, the Illinois courts also ruled that Harris had waived his claim that the government violated his due process rights by allowing the jury to see a file cart with prejudicial markings by failing to raise it until his petition for post-conviction review, and that claim is also procedurally defaulted. Finally, Harris procedurally defaulted his claim that the state violated his due process rights by leaving a sawed-off shotgun in the base of the file cart because he never raised this claim before any state court.

Harris argues that the ineffectiveness of his *trial* counsel provides good cause to excuse his procedural default of these prosecutorial misconduct claims. The problem with Harris's argument is that his ineffective assistance of trial counsel claims are also procedurally defaulted. Although Harris raised his ineffective assistance of trial counsel claim in his post-conviction petition, the Illinois courts declined to resolve it on the merits, ruling instead that Harris had waived the issue by failing to raise it on direct appeal. Under Illinois law, a defendant must raise claims of ineffective assistance of counsel on direct appeal where the evidence needed to resolve those claims is present in the record. *People v. Ivy*, 730 N.E.2d 628, 635 (Ill. App. Ct. 2000). Here, all of Harris's claims regarding the assistance of trial counsel relate to trial counsel's failure to object to the prosecutor's allegedly inflammatory and improper remarks, and so no additional evidence was needed to resolve those claims. Because the Illinois courts relied upon an adequate and independent state procedural ground for its decision, Harris's claims regarding the

assistance of *trial* counsel are also procedurally defaulted, and thus cannot serve as cause to revive his procedurally defaulted prosecutorial misconduct claims.

No matter, according to Harris, because he also argues that the ineffectiveness of his *appellate* counsel provides good cause to cure the procedural default of his claim that his trial counsel was ineffective. While it is true that ineffective assistance of counsel may provide good cause for a procedural default, *see Murray v. Carrier*, 477 U.S. 478, 489 (1986), in this instance, it does not because Harris *himself* chose not to raise on direct appeal the issue of his trial counsel's ineffectiveness. Harris had the opportunity to raise any issue he wanted on appeal because the appellate court allowed him to file a supplemental brief *pro se*. Because Harris himself chose *not* to raise the issue of his trial counsel's ineffectiveness, his appellate counsel's failure to raise that issue cannot provide good cause to excuse his procedural default.

Even if Harris could show good cause for failing to raise on direct appeal the ineffectiveness of trial counsel, he cannot demonstrate *actual prejudice* arising from this default. *Reed v. Farley*, 512 U.S. 339, 354, 355, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994). Harris provides little explanation of why his appeal might have been successful had his appellate counsel raised the issue of his trial counsel's ineffectiveness. In his memorandum of law in support of his petition that "there is . . . no doubt that had Harris's appellate counsel . . . raised Harris's Fifth and Sixth Amendment violations and prosecutorial misconduct . . ., Harris *may* have been successful on appeal." (emphasis added). But the possibility that Harris *may* have been successful on appeal is not sufficient to demonstrate *actual prejudice*,

9

and Harris's subjective assessment of the possible results is unconvincing. Much of Harris's assessment consists of speculation that he was prejudiced by his appellate counsel's failure to address the merits of his prosecutorial misconduct claims because his *pro se* brief failed to subject the merits of the prosecution's case to meaningful adversarial testing. Harris speculates that had appellate counsel raised the issues surrounding the impropriety of the prosecutor's comments during closing arguments that the result of his appeal may have been different. But Harris ignores the fact that the Illinois Appellate Court never addressed the merits of his prosecutorial misconduct claims because it found that they had been waived. Thus, even had Harris's appellate counsel argued the merits of his prosecutorial misconduct claims, Harris cannot show that the results of the proceedings would have been different. Harris simply offers no explanation of why appellate counsel would have been successful in persuading the appellate court to address the merits of his prosecutorial misconduct claims and overlook his waiver of the issues.

Harris has shown neither good cause nor actual prejudice, both of which are necessary to revive his procedurally defaulted claims. Accordingly, the Court finds that Harris has procedurally defaulted his claims related to prosecutorial misconduct and to ineffective assistance of trial counsel.

IV. Analysis

A.  *Fifth Amendment*

Harris did not procedurally default his claim that the prosecutor referred unconstitutionally to his silence at trial. The Fifth Amendment forbids prosecutors from

10

inviting the jury, directly or indirectly, to draw an adverse inference from the accused's silence. *Griffin v. California*, 380 U.S. 609, 613 (1965); *United States v. Aldaco*, 201 F.3d 979, 987 (7th Cir. 2000). In evaluating whether the prosecutor's closing arguments violated Harris's Fifth Amendment rights, the Court first examines the remarks in isolation to determine whether the comments were improper. *United States v. Anderson*, 303 F.3d 847, 854 (7th Cir. 2002). If the comments were improper and violated a specific trial right, such as the Fifth Amendment right against self-incrimination, then a court may hold the error harmless and uphold the conviction only if the government proves beyond a reasonable doubt that the defendant would have been convicted absent the unconstitutional remarks. *United States v. Mietus*, 237 F.3d 866, 870 (7th Cir. 2001). The government argues that the prosecutor's remarks did not, in fact, invite the jury to draw an adverse inference from the accused silence, and thus were not improper at all. The Court agrees.

Harris argues that when the prosecutor stated that "Earl Harris [could have stood] up and ask[ed] Mr. Grzyna, can you say that is not the man who did it . . . [h]e could have looked at all of you and said, [w]ell none of these people. It sure wasn't me." Harris asserts that these comments necessarily focused the jury's attention on his failure to testify at trial. The Illinois Appellate Court, however, found otherwise, ruling that the prosecutor did not comment on Harris's decision not to testify, but instead attempted "to put [Grzyna's] failure to identify the defendant into perspective . . . ." (Pet. Ex. E at 10-11). The state applied the proper rule of law, holding that the "test for determining whether a defendant's right to remain silent has been violated is whether the reference was intended

or calculated to direct the attention of the jury to the defendant's decision not to testify." Thus, Harris must show that the state appellate court's conclusion is an unreasonable application of clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d)(2); *Williams, v.* 529 U.S. at 404-05. A federal court simply disagreeing with the state court decision does not warrant habeas relief. Under section 2254(d)(2), relief may be had where the petitioner can show by clear and convincing evidence that the state court's factual determinations were unreasonable. *Harding v. Walls*, 300 F.3d 824, 828 (7th Cir. 2002). But Harris never attempts to address the Illinois Appellate Court's finding that the prosecutor's remark was not an improper comment in the first instance. Harris simply offers no explanation why the state court's factual finding related to the nature of the prosecutor's comments is incorrect.

In any event, a careful reading of the prosecutor's closing argument confirms the state appellate court's finding. Defense counsel suggested in closing arguments that Grzyna had been unable to identify Harris as the perpetrator of the murder, and therefore the jury should exonerate Harris. Defense counsel's argument drew the following response from the prosecutor: "[t]he first thing we have to deal with is [Grzyna] did not identify this man." In the following paragraph (where the allegedly improper remark occurs), the prosecutor explains Grzyna's failure to finger Harris as the gunman. At the conclusion of the paragraph, the prosecutor informs the jury that Harris never *asked* (not testified) Grzyna if he were certain that the gunman was someone other than Harris. The prosecutor goes on to explain that, "[h]e could have looked at all of you and said, Well none of these

12

people. It sure wasn't me." It is clear from the context of the paragraph that the "he" of the prosecutor's closing statement refers to Grzyna, not Harris. Although perhaps inartfully worded in a lengthy closing argument, the prosecutor's statements explain that Grzyna did not testify that he was certain that Harris was not the gunman. The Court therefore concludes that Harris's claim that the prosecutor's closing argument violated his Fifth Amendment rights fails because the alleged remarks were not improper to begin with.

Furthermore, even if the remarks were improper, the Court is convinced beyond a reasonable doubt that Harris would have been convicted even if they had not been uttered. Harris suggests that there was "little, if any, evidence" that he murdered Rutkowski, and that but for the prosecutor's allegedly improper remark, Harris would not have been convicted. While there was no forensic evidence linking Harris to the crime, the eyewitness testimony coupled with Harris's statements to the police and to his acquaintances provided overwhelming evidence of his guilt. First, although Grzyna did not identify Harris as the shooter, he did testify that the man who jumped over the bar committed the murder. Harris admitted to the police (unaware of Grzyna's identifying statement at the time) that he had entered the bar with Bass, Walton and Boyd intending to rob the bar and that during the commission of the robber he jumped over the bar. But the State did more than just link Harris's confession to Grzyna's identification. The state also presented the testimony of Anderson, an acquaintance of Harris's, who testified that Harris admitted to him that he had been the shooter. Anderson further testified that Harris frequently carried

13

a .380 automatic pistol, which matched the weapon used to shoot Rutkowski. Harris thus made — at different times, to different persons — not one but two inculpating statements. His confessions provide more than sufficient evidence to convince the Court that even if the prosecutor had not made the allegedly improper comment, Harris would have nonetheless been convicted.

B.  *Ineffective Assistance of Appellate Counsel*

As noted earlier, Harris attempts to breath life into his procedurally defaulted prosecutorial misconduct claims by recasting them in the form of a claim that his appellate counsel was also ineffective.[3] In order to establish that counsel was ineffective, Harris must prove not only that counsel's performance fell below an objective standard of reasonableness, but also that he was prejudiced by counsel's performance. *Strickland*, 466 U.S. at 687; *Wright v. Gamley*, 125 F.3d 1038, 1041 (7th Cir. 1997). In order to establish prejudice, Harris must show that counsel's substandard performance created a "reasonable probability" that but for counsel's errors, the result of the proceeding would have been different. *Liegakos v. Cooke*, 106 F.3d 1381, 1386 (7th Cir. 1997).

Harris's claim that his appellate counsel was ineffective must fail. As noted previously, the Illinois Appellate Court allowed Harris to file a *pro se* brief to supplement the issues raised by his appellate counsel (in spite of precedent prohibiting such

---

[3] Petitioner also argues that appellate counsel was ineffective in allowing the appeal to be dismissed. In light of the fact, however, that counsel succeeding in reinstating Petitioner's appeal, he could not show any prejudice as required under *Strickland v. Washington*, 466 U.S. 668 (1984).

procedures). Harris did so, and raised each of the claims that he argues his appellate counsel was ineffective for failing to raise. The state appellate court addressed these arguments and found that Harris had waived them because he failed to object to them at trial. Because the Illinois Appellate Court considered the precise issues Harris now claims his appellate counsel should have raised to have been waived, he cannot have been prejudiced by his counsel's failure to raise them. Even had the Illinois Appellate Court refused to consider Harris's *pro se* brief on direct appeal, Harris has not shown that the result of his appeal would have been different.

C.  *Illinois Rule for Preservation of Appealable Issues*

Harris lastly argues that the Illinois rule for preserving appealable issues unconstitutionally burdens his right to appeal. Harris devotes not a single sentence in explanation of this claim in either his brief in support of his petition or in his reply to the government's answer to his petition, and so he has waived it. *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir.1991).

V.  Conclusion

For the foregoing reasons, Harris's petition for a writ of *habeas corpus* is DENIED.

2-18-03
Date

Amy J. St. Eve
United States District Court